Caldwell, J.
There are six of these cases on our dockets, being different appeals taken in the same case in the common pleas court, and separately docketed in this court. They have been consolidated with the first case No. 2418 of the docket, and this decree disposes of all the cases.
The plaintiff-brings his action as trustee of the will of Robert Hanna, and asks the court to direct him how he is to execute certain portions of his trust; in other words, to construe the will as to certain particulars designated by him in his petition. In the petition he has designated the different instructions that he wishes, by numbers, and I follow those numbers.
As to when he may make final settlement and distribution of the estate, we hold that it is within hds discretion whether he does that before the death of Cassius B. Hanna,, or as soon as he can thereafter.
As to his next inquiry, we construe the will to be that upon final distribution, neither Cassius B. Hanna nor his wife will be entitled to any portion of the corpus of the estate.
As to his fourth inquiry, we hold that Cassius B. Hanna has no interest in the income beyond such sums as the executor, in his judgment, may deem it proper to expend for his support prior to distribution.
His fifth inquiry is as to what distribution he shall make of the monies realized from the coal lease: Shall he account for it as income, or shall he divide it as principal? We hold that he is to divide it as principal. We do not so hold without first having examined very carefully the cases cited upon the hearing of the case and in the briefs of coun *218 sel; and we have not overlooked the cases cited from the supreme court of Pennsylvania; but we distinguish this case in some particulars from the Pennsylvania cases, and that distinction leads us tó a different conclusion from that held in the Pennsylvania cases. It is the law, and so held by all the courts, so far as we have observed, that if this coal had been sold outright by the trustee, it would be regarded by the courts as a part of the land and to be divided as capital. If any portion of the land had been sold, or the whole of it, for a money consideration, the money realized therefor would, take the place of the land and still be regarded as belonging to the principal of the estate.
The Pennsylvania cases are cases where the one taking the income, was given a life estate, the remainder man taking what was left at the end of the life estate. And those cases follow the law as laid down by ail the authorities, that where mines are opened at the time that the will takes effect, the life tenant gets a right to work the mines during the time of her life estate; and the same is true of quarries, sand-beds, of gravel, and of clay, and if the will, by which the life estate is created, provides that mines are to be opened by the trustee and worked, the life tenant is to have the profits arising from the working of the mines, and the remainderman only gets such coal or other material as is not worked out during the life estate, The principle on which this is held in the Pennsylvania cases, we apprehend is this: That if the mine is open at the time of the death of the testator and in operation, that the clear intent of the testator is that they shall continue to be worked; and if he provides in his will that they are to be opened and worked, then that is an appropriation by him in his will that so much of the coal or other material beneath the surface as shall be worked during the time of the life estate, shall go to the life tenant so far as there shall be net earnings from such mine And, in such cases, the will in and of itself gives to the life tenant the profits of the mine, and gives to the remainderman only what is left at the death of the life tenant.
In examining the will before us for consideration, we look in vain for anything in the will that would indicate that the testator intended that this coal should be worked by way of a lease for the benefit of those who were to take the income *219 of the estate. There is no positive time fixed by the law or by any certain event when his estate is to be distributed among the beneficiaries. The only event that sets any limit upon the matter of distribution is the death of Cassius B. Hanna. There is a provision that there shall be no distribution during the life of tbe widow that would, in any way, interfere with her getting the annuity provided for her. But she was of that age at the death of the testator that he must have anticipated that the holding of the estate for this purpose would be of very short duration.
In this will, there is no life tenant. Those who are to receive the income, may receive it for one year; they may receive it for two years; and the time they shall receive it is entirely within the option of the trustee.
In this will, unlike the cages cited us from Pennsylvania, the income is not given as an absolute estate to one person for life, and the remainder to others, but the same persons take both income and the corpus of the estate when it is distributed. The only distinction is the proportion in which they are to be divided.
In our judgment, the testator, at the time of making his will, intended that his entire estate, both income and principal, should vest and be in the five grandchildren named in his will; and the only object or purpose of keeping income separate from capital is the different proportions in which they are divided among the five grandchildren or among those who are to receive them. And we think it was the intent of the testator that his estate, as it existed at the time of his death, should be the estate that the five grandchildren should have upon final distribution. They took this property at the time of his death, if not the legal title to the same, which was probably vested in the trustee, at least the equitable title; and although the discretion of the trustee is broad as to his rights over the property to sell and rent, yet we are of the opinion that it was not the intent of the testator, under the broad powers given to his trustee, to convert a part of the real estate into money and call it income.
We are told by the trustee, in his testimony, that the coal, under the lease he has made, in all probability will amount to about $120,000, and, after that is taken from the *220 land, what remains is almost, .if not quite, worthless. The trustee had it within his power to distribute this estate so that none of this $120,000 should ever be realized before such distribution. He has had the same power every year since the lease was made, and he has the power to continue the lease until all the coal is exhausted from the land and the $120,000 fully realized. So if this $120,000 is to be divided as income, and not as capital, it will be observed that such division is not determined by anything expressly stated in the will, but entirely by what the trustee sees fit to do with the property, and we do not believe that it was the intention of the testator to place in the hands of his trustee the power of saying that virtually all of that land should be divided as income, or, on the other haqd, of saying that by an early distribution it should all be divided as capital, and we discover, therefoYe, we t_ink, a difference between this case and the cases cited from, Pennsylvania,, which should lead to a different conclusion, and our conclusion is that whenever the trustee distributes the money realized under the lease of the coal lands, he shall distribute it as capital, and not as income.
The sixth inquiry is substantially the same as the fifth, and, we think, is sufficiently answered by what has' already been said in answering the fifth,
Upon reading the will as to equalizing the heirs of Ariel and Cassius B. Hanna for sums of money piid by the testator to Cassius B. Hanna in his lifetime, amounting to $53,770.64, we hold that the will means that the trustee is to agree with Cassius B. Hanna as soon as he can after the death of the testator, as to the amount of those advancements, and that when the executor comes to equalize the heirs of Ariel, he is to take from the principal of the estate $53,770.64, and divide that equally among her three children, and what remains of the principal of the estate after such deduction, is to be divided into five equal parts, and one part goes to each grandchild referred to in the will. That when the amount was ascertained by the trustee to be $53,770.64, that amount was not to draw interest from the date of such determination, and when that amount is paid over to the three grandchildren, it is to be paid without interest, providing distribution is made as of *221 the date of the death of Cassius B. Hanna or before.
We are told that this rule is inequitable; that the intention of the testator was to equalize his two children in hie estate.
Such, undoubtedly, was the intention of the testator at the time he wrote his will; but it just as clearly appears at the time he wrote his codicil to his will, that his intention was that interest was not to be computed on the advancements to Cassius B. Hanna. And we do not find it to be the intention that the amount necessary to equalize when it should be ascertained, should draw interest until the same was paid.
Thus far I have only spoken of the construction to be given the will and the codicil when construed separately. The only modification that we can see that the codicil makes of what was originally written in the will, is, that it relieves the advancements to Cassius B. Hanna from the payment of interest. Then, if we substitute this into the original will, it would read as it does now, except that Cassius B. Hanna should pay no interest upon the advancements made to him before the death of his father. But it is claimed' that the will, as thus modified by the codicil, is susceptible of this construction: That when the amount was ascertained, necessary to equalize, that the determining of the amount and what is said about having it paid to the children of Ariel in order to equalize, is susceptible of the meaning tha* that much of the estate was, at the time of such ascertainment, appropriated, by force of the will, to the children of Ariel, and became their property, and if not then paid over to them, should be paid at as early a date as the estate would permit of such payment without defeating other provisions of the will and, if not paid at the time of the ascertainment or at such future time as payment could be made without defeating other purposes of the will, then, from such time, whether it be the former time or the latter tim", said amount would draw interest.
But, in reading the will, we can not come to the conclusion that it was the intention of the testator that the children of Ariel should receive the sum that would equalize them at the time of such ascertainment, and. if not tben *222 receiving it, that they should receive interest until' it was paid, Nor can we reach the conclusion that it would become theirs as soon as it could be paid to them,, without defeating other benefits expressed in the will,
But the will, we think, taking all that pertains to this subject, leaves to the trustee an option as to when he should, pay that $53,770.64, and that the same should draw no interest until such time of payment,
The eighth inquiry is as to out of what fund the trustee shall pay the necessary expenses of the litigation that arose in the United States courts, wherein the interest of Cassius B. Hanna was sought to be appropriated to the payment of his debts by some of his creditors,
It may have been to the interest of all parties concerned, to have this will construed as to the possibility of the interest of Cassius B Hanna in the estate being reached; but, if the children of Ariel had any interest at all, it was very slight; and we think those fees and expenses should be charged to and taken out of the moneys going to the family of Cassius B, Hanna.
As to whether the trustee has a right to pay out of the funds of the estate, over and above an allowance made to ■him in the will, the expenses of his bookkeeper.
It is difficult for us to answer this question. The nearest we can come to it is to say this: That if the keeping of the books is a duty not contemplated within the duties prescribed by the will that the trustee is to perform, then it is a necessary expense not in contemplation of the will to be taken out of the thousand dollars a year. And we hold that if that expense is necessary, the bookkeeper may be paid a reasonable amount for such work out of the moneys of the ■estate, over and above the compensation of the trustee.
And under the ninth inquiry we hold that when the income of any one year is insufficient to bear the necessary expenses of that year, such as taxes, etc., and allow a sufficient remainder to pay the trustee his annual dues under the will, then he may take any deficiency, necessary for .such payment, out of the body of the estate, and shall not thereafter, by reason of income coming into his hands, ■charge the same up to income, and credit it likewise to the ■estate.
Dickey, Brewer & McGowan, for Plaintiff.
Norton T. Hoor, W. E. Cushing, Andrew Squire, W. B, Sanders, for Defendants.
As to the duty of the trustee to buy a homestead for each grandchild, etc.
No occasion has arisen for the construction of this portion of the will, and, in fact, it is in evidence that no grandchild has applied for such a home and, in all probability none ever will apply. And we understand it to be the rule in this state, that we are not to answer cases that are likely to arise or may possibly arise, but only such as have arisen in the execution of the trust by the trustee.
The only remaining inquiry that it is proper for us to answer, is as to whether the trustee, after he has made advancements to any of the grandchildren, has a right to charge interest on the same.
It seems, from the reading of the will, that what is meant by advancements to grandchildren by the trustee, is intended to mean partial distribution,
If the money is loaned and a note taken for the same or any other evidence of indebtedness, it is not an advancement nor a distribution.
We hold that when money is actually advanced or distributed by the trustee to the grandchildren, the money thus advanced, becomes the property of the one to whom it is given, and the trustee no longer has any control over it or any right to interest on the same any farther than what the law requires, and it is equity that the grandchildren should be kept as near equal as possible in the distribution of the estate, that no advantage should be given to one more than is given to others — 'and we would not hold but that in working out such equality, if the trustee should find that one of the grandchildren was more needy than others, that he might help such one by funds in his hands belonging to the principal of the estate, and charge interest on it, but such use should not be considered in the light of distribution or of advancements.